IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN TANNER BLAKE MILLSAPS, #574644, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 3:24-cv-00786 |
| VINCENT VANTELL, JR., Warden, et al., | ) ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Justin Millsaps, a state prisoner incarcerated at the Trousdale Turner Correctional Center (TTCC), filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2). Although the Complaint and IFP application purported to have been filed by both Millsaps and his cellmate at the time, Justin Timothy Griffith, the Court received a notice from Mr. Griffith less than two weeks after this suit was filed, stating that he did "not want to be a plaintiff in this case," did not know why Millsaps "used [his] name," and did not "want anything to do with it." (Doc. No. 5.) This notice, construed as a motion to be removed from the case, will be granted.

This case is before the Court for ruling on Plaintiff Millsaps's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

**I. PAUPER STATUS**

A prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff Millsaps's submission that he lacks the funds to pay the entire filing fee, his IFP application (Doc. No. 2) is

**GRANTED** and a $350 filing fee is **ASSESSED**.[1] The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the

---

[1] Prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee," 28 U.S.C. § 1915(b)(1), either in a lump sum at the time of filing or in installments over time via an assessment against the prisoner's inmate trust account. Where the prisoner is granted pauper status and allowed to pay in installments, the fee is $350. *See* 28 U.S.C. § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023).

Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

3

## B. Allegations and Claims

Plaintiff filed his Complaint on June 27, 2024, naming two defendants: TTCC Warden Vincent Vantell and the CEO of CoreCivic,[2] David Henniger. (Doc. No. 1 at 2.) Plaintiff claims that his right to humane living conditions and adequate health care was violated during August and September 2023, when he only received two showers each month; from August to October of 2023, when he filed at least ten requests for a sick call and did not receive any response from prison medical staff; and during December 2023 and January 2024,[3] when he was not able to order soap, toothpaste, or deodorant from the prison commissary. (*Id.* at 5.) As relief, he seeks an award of damages to compensate him for "the unhealthy living conditions [and] the lack of adequate medical, mental health, and dental treatment." (*Id.* at 6.)

## C. Analysis

The Eighth Amendment's prohibition against cruel and unusual punishment requires that inmates not be subjected to severe conditions of confinement that deprive them of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But isolated instances of "restrictive and even harsh" conditions resulting in temporary discomfort are insufficient to support an Eighth Amendment claim, as they are "part of the penalty that criminal offenders pay for their offenses against society" rather than the sort of extreme deprivations that amount to cruel and unusual punishment. *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Rhodes*, 452 U.S. at 347, and *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). In short, "the

---

[2] CoreCivic is the "private corrections management firm" that operates TTCC. https://www.tn.gov/correction/state-prisons/state-prison-list/trousdale-turner-correctional-center.html (last visited Feb. 24, 2025).

[3] The Complaint alleges a deprivation of hygiene items "for the months of December 2023 and January 2023." (Doc. No. 1 at 5.) The Court assumes that Plaintiff intended to write January 2024 instead of January 2023.

4

Eighth Amendment is concerned only with deprivations of essential food, medical care or sanitation[,] or other conditions intolerable for prison" because they pose a substantial risk of serious harm. *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *Rhodes*, 452 U.S. at 347; citing *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

With regard to the alleged deprivation of access to personal hygiene items, the Complaint in this case does not allege that Plaintiff was made to do without such items *entirely* for the two-month span from December 2023 to January 2024. It alleges that he "wasn't able to order any hygiene items off of commissary," resulting in him not having "adequate" soap, toothpaste, or deodorant during that time. (Doc. No. 1 at 5.) The Sixth Circuit has affirmed the screening dismissal of a complaint that similarly alleged a denial of the ability to purchase hygiene products, finding that the deprivation did not rise to the level of cruel and unusual punishment because it was not accompanied by allegations that the inmate "suffered extreme discomfort due to his inability to purchase the items or that he was completely denied the basic elements of hygiene." *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002). The same is true of the Complaint in this case, which, at least in its current form, fails to sufficiently allege that the temporary denial of Plaintiff's ability to purchase hygiene items from the commissary resulted in (or contributed to) a constitutional violation.

The Complaint's allegations of a temporary denial of basic hygienic needs beginning in August 2023 are more concerning. Plaintiff alleges that he, his cellmate, and every other inmate in segregation was limited to two showers in August 2023 and two showers in September 2023. In *Walker v. Mintzes*, 771 F.2d 920 (6th Cir. 1985), the Sixth Circuit affirmed a district court order "that prisoners in administrative segregation . . . , not in frequent contact with others, be afforded at least one shower per week as a constitutional minimum[.]" *Id.* at 928. Although the *Walker*

5

court's ruling recognized that it was the "proper role" of the district court to set the frequency with which a particular prison population must be allowed to bathe, the ruling also generally recognized that "sanitation is a major concern in prisons." *Id.* Clearly, prisoners must be allowed to maintain personal hygiene, even if circumstances render showers temporarily unavailable. *See Henderson v. Cnty. of Kent*, No. 1:24-CV-1026, 2024 WL 4540459, at *14 (W.D. Mich. Oct. 22, 2024) ("Even though Plaintiff alleges that he was only permitted to shower once between September 8 and 17, 2024, he does not allege that he was denied the ability to maintain hygiene on the days he was not allowed to shower.").

Here, Plaintiff does not claim that his access to personal hygiene items was limited during the same two-month period as his access to showers, and he does not explicitly connect any alleged health consequences to the inability to bathe. However, he does claim that ten sick call requests went unanswered during the same timeframe as his access to showers was limited. Although the Complaint does not indicate the health reason(s) for writing those ten sick call requests (*see* Doc. No. 1 at 5), the Court finds for purposes of initial review, and in light of the ruling in *Walker v. Mintzes*, that the alleged denial of adequate showers combined with the alleged disregard of sick call requests would be sufficient to allow Plaintiff's Eighth Amendment claim to go forward against an appropriate defendant. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ("Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need[.]").

Turning to the question of whether the Complaint names an appropriate defendant, the Court finds that it does not. The CEO of CoreCivic is not properly named in an action that does not attribute any claimed injury to him personally or—to the extent he is sued in his official

6

Case 3:24-cv-00786   Document 6   Filed 02/24/25   Page 6 of 9 PageID #: 23

capacity, as a stand-in for the company he leads—to a CoreCivic policy or custom. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") (citing *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991)); *Massey v. CoreCivic, Inc.*, No. 3:23-CV-00034, 2023 WL 5917399, at *5 (M.D. Tenn. Sept. 11, 2023), *aff'd*, No. 23-5865, 2024 WL 3086518 (6th Cir. June 21, 2024) ("CoreCivic, however, as a private entity performing a government function, 'can be found liable under § 1983 [only] where the [entity] itself causes the constitutional violation at issue,' through execution of its own policies or customs.") (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). The Complaint in this case does not contain any allegations attributing liability personally to Defendant Henniger or, through his official role, to CoreCivic.

Likewise, Warden Vantell is not alleged to have been personally involved in, or even aware of, the deprivations Plaintiff claims to have occurred between August and October of 2023. Vantell is therefore not properly sued in his individual capacity for monetary damages. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (noting that supervisory official's "mere failure to act was not a sufficient basis for liability"; such "officials should be personally liable in damages only for their own unconstitutional behavior"); *Smith v. Warden*, No. 3:20-CV-468-JD-MGG, 2020 WL 3302993, at *1 (N.D. Ind. June 18, 2020) ("There is no indication from the complaint that the warden was personally involved in these events or that he was personally aware of the conditions in Smith's cell. Smith therefore cannot proceed against the warden in his individual capacity for monetary damages.") (citing, *e.g.*, *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)). While the Warden may properly be sued in his official capacity for injunctive relief from ongoing unsanitary conditions, Plaintiff does not allege that the unsanitary conditions he faced are ongoing.

In sum, while the Complaint alleges a colorable Eighth Amendment claim, no right to relief on that claim is plausibly asserted against the defendants it names. Although the Complaint as currently constituted is thus not viable, the Court in its discretion "can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). The Court will exercise that discretion in this case and allow Plaintiff an opportunity to amend in order to identify appropriate defendants and provide additional factual support for his Eighth Amendment claim pertaining to the denial of showers and sick call requests between August and October of 2023.

### III. CONCLUSION

As explained above, although the Complaint is subject to dismissal for failure to state a claim on which relief may be granted, 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), the Court will allow Plaintiff to file an Amended Complaint in response to this Order within **30 DAYS** of the entry of the Order. Specifically, the Amended Complaint should identify as defendants any individuals who: (1) were personally involved with the denial of Plaintiff's right to sanitary prison conditions, and (2) whose acts or omissions caused or contributed to any injuries he allegedly suffered. Plaintiff should provide as much detail as he can about the involvement of any individual defendant he names, including, if possible, the date, time, and location of such involvement. If he desires to pursue a claim against CoreCivic, Plaintiff must identify the CoreCivic policy or custom that caused him harm.

The Clerk is **DIRECTED** to provide Plaintiff with a form for filing a civil rights complaint (Pro Se Form 14). Plaintiff is cautioned that failure to file an Amended Complaint using the provided form within 30 days (or to seek an extension of this deadline before it expires), or failure to keep the Court apprised of his current address, will result in the dismissal of this action.

Plaintiff Justin Griffith's motion to be removed from the case (Doc. No. 5) is **GRANTED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE